CHARLES O. ANDERSON and NANCY L. ANDERSON, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Anderson v. Commissioner
Docket No. 5340-73.
United States Tax Court
T.C. Memo 1976-28; 1976 Tax Ct. Memo LEXIS 370; 35 T.C.M. (CCH) 101; T.C.M. (RIA) 760028; February 4, 1976, Filed Trent G. Anderson, Jr., for the petitioners. John O. Kent, for the respondent. TIETJENS
MEMORANDUM FINDINGS OF FACT AND OPINION TIETJENS, Judge: The Commissioner determined deficiencies in the Federal income tax of Charles O. and Nancy L. Anderson in the amounts of $1,000.71, $11,958.07, and $7,445.20 for the calendar years 1962, 1966 and 1967, respectively. The issues in this case are: (1) Whether the Commissioner's determination for the taxable year 1962 should be sustained. (2) Whether the cost of purchasing equipment subsequently leased by petitioner should have been capitalized. (3) Whether petitioner received ordinary income from the sale of Autocycle Machine No. 2132. (4) Whether a portion of petitioner's expenses for travel and entertainment in 1965 and 1966 were personal expenses and nondeductible. (5) Whether pursuant to Code section 482 [1] income should be allocated to petitioner on the sale in 1967 of Autocycle Machine No. 2117 by petitioner's related *373 corporation, Autocycle Corporation. (6) Whether petitioner received constructive dividend income in 1966 from his related corporation on the corporate assumption and payment of a liability of petitioner. (7) Whether petitioner received constructive dividends from Roto-Mech, Inc. and Autocycle Corporation when the corporations paid travel and entertainment expenses, made payments for the personal auto of the petitioner and paid rent on machines already sold to unrelated third parties. (8) Whether petitioner received additional unreported interest income in 1966 on a note to Autocycle Corporation. (9) Whether gain on the sale of Autocycle Machine No. 2081 should have been reported as ordinary income in 1966. (10) Whether interest expense on a note to American Electronics, Inc. should be decreased from $1,713.60 to $476. (11) Whether sales of Autocycle Corporation stock in 1967 qualified as installment sales. (12) Whether petitioner received constructive dividend income in 1967 from his related corporation following purchase of a Warner Swasey machine. FINDINGS OF FACT *374 Petitioners, Charles O. and Nancy L. Anderson, filed joint income tax returns with the District Director of Internal Revenue in Los Angeles, California for the calendar years 1962, 1965, 1966 and 1967. Petitioners resided in Palm Desert, California at the time they filed their petition. Nancy Anderson is a party only by virtue of having filed a joint Federal income tax return with her husband. Charles O. Anderson will be referred to herein as petitioner. Petitioner, Charles O. Anderson, was the sole owner of a corporation named Roto-Mech, Inc. which was a job machine shop. Petitioner leased equipment, most of which he owned himself, to Roto-Mech, Inc. In 1964 petitioner acquired in a "bargain purchase" the assets, including the patent rights, trademark, inventory, jigs, dies and fixtures of American Electronics, Inc. The assets acquired from American Electronics, Inc. included seven Autocycle machines, Serial Numbers 2081, 2110, 2114, 2117, 2123, 3001 and 2094. Autocycles are machines which make precision metal parts. After petitioner acquired the Autocycle machines and other inventory, he began developing and organizing a method of assembling the Autocycles. Petitioner, doing *375 business as Autocycle Company, was on the accrual method of accounting. On December 10, 1964, petitioner sold an Autocycle to Anderson Die Cast. Anderson Die Cast paid for the machine on December 15, 1964. However, no transactions concerning Autocycle Company were reported on petitioner's 1964 joint income tax return. On October 1, 1964, petitioner entered into a lease with his corporation, Roto-Mech, Inc. for the purpose of leasing to Roto-Mech, Inc. three Autocycles, Serial Numbers 2117, 2110 and 2081, which he had acquired from American Electronics, Inc. Roto-Mech, Inc. used the leased Autocycle machines to manufacture parts, and petitioner also used the three leased machines as demonstrators. He demonstrated the machines to prospective customers with the hope that he could sell Autocycle machines to them. In 1965 and 1966 petitioner deducted from cost of goods sold expenditures made on these same three Autocycles as section 174(a) Research and Experimental Expenditures. Petitioner's witnesses testified that the Autocycle machines when purchased were unfinished and that petitioner had difficulty getting them to work. However, no separate account for research and development *376 expenses was set up by the Autocycle Company. From the date of purchase until incorporation petitioner improved the design and modernized the Autocycle machine. Petitioner attached a Schedule C to his 1965 joint income tax return reporting a net loss in the amount of $24,221.24 from the business transaction of Autocycle Company for the period ending December 31, 1965. In 1966 petitioner included the price of Autocycle Machine No. 2132 in his cost of goods sold. Petitioner listed this machine as new in 1966 on a lease between petitioner and his corporation, Roto-Mech, Inc. In August of 1966 petitioner's newly formed Autocycle Corporation sold this machine. Petitioner subsequently included this machine on a lease between himself and Roto-Mech, Inc. On his 1965 Federal income tax return petitioner deducted $2,866.76 and on his 1966 return he deducted $8,034.34 for entertainment and travel. Petitioner, doing business as Autocycle Company (hereinafter d.b.a. Autocycle Company), kept a daily calendar book on which orders were recorded as well as the names of individuals whom he and his employees took to lunch. Charge slips signed by his salesmen evidenced most of these luncheon expenditures. *377 Often following these luncheons the customers and salesmen would make a decision concerning specifications for a machine. The salesman would then have a proposal typed which would contain the name of the customer and be signed by the salesman. After the Internal Revenue Service audit the bookkeeper prepared a spreadsheet correlating the name of the salesman, the entertainment bills and the proposals. On April 27, 1967, petitioner sold to Autocycle Corporation an Autocycle Machine No. 2163 for $2,159.90. On the same day Autocycle Corporation sold an Autocycle Machine No. 2117 to Compact Precision for $8,750. Prior to the sale to the corporation one of petitioner's Autocycle machines was renumbered 2163. On June 30, 1966, petitioner incorporated Autocycle Company. At the time of the incorporation the assets transferred were not identified by serial number. As part of the section 351 transfer, an Account Payable to Roto-Mech, Inc. was transferred to Autocycle Corporation. Autocycle Corporation assumed all liabilities of the Autocycle Company operated as a sole proprietorship by petitioner. The Account Payable to Roto-Mech, Inc. was carried on the Autocycle Corporation books as *378 an Account Payable No. 2450. The balance in Account Payable No. 2450 in the Autocycle Corporation General Ledger carried over from June 1966 was $14,602.65. Roto-Mech, Inc. had an Account Receivable No. 1990 which recorded transactions with Autocycle Corporation. Roto-Mech, Inc. also had an Account Receivable No. 1980 which recorded transactions with Charles O. Anderson, d.b.a. Autocycle Company. Roto-Mech, Inc. also had an Account Receivable No. 1100 for C. O. Anderson, d.b.a. Autocycle Company. On June 30, 1966, the balance of Autocycle Corporation's Account Receivable No. 1990 in Roto-Mech, Inc.'s books and records was $4,775.97. The balance in Roto-Mech, Inc. Account Receivable No. 1100 from C. O. Anderson, d.b.a. Autocycle Company, on July 30, 1965, was $9,189.25. On November 5, 1965, a credit was made to the Roto-Mech, Inc. Account Receivable No. 1100 from C. O. Anderson, d.b.a. Autocycle Company, in the amount of $5,000. The balance in the Roto-Mech, Inc. Account Receivable No. 1100 from C. O. Anderson, d.b.a. Autocycle Company, on November 5, 1965, was $4,189.25. There were no further credits or debits in the Account Receivable No. 1100 from C. O. Anderson, d.b.a. Autocycle *379 Company, up to and including the date June 30, 1966. Roto-Mech, Inc. Account Receivable No. 1980 from Charles O. Anderson, d.b.a. Autocycle Company, was reduced during July 1966 to $60.98 as a result of charges and payments made prior to June 30, 1966. The balance due in the Roto-Mech, Inc. Account Receivable No. 1980 was $60.98 from July 31, 1966 through November 30, 1966 when the balance was transferred by journal entry to the Autocycle Account Receivable No. 1990. On November 30, 1966, Roto-Mech, Inc. transferred by journal entry E $500.15 from the Prepaid Insurance, Account No. 1300, to the Autocycle Corporation Account Receivable No. 1990. The $500.15 transferred by journal entry E was for insurance covering the period January through June 1966. The amounts due from Autocycle Company according to the Roto-Mech, Inc. books on June 30, 1966, were as follows: Account No. 1990
$4,775.97
Account No. 1100
4,189.25
Account No. 1300
500.15
Account No. 1980
60.98
Total
$9,526.35
On November 30, 1966, Roto-Mech, Inc. transferred by journal entry E $9,189.25 from the Account Receivable C. O. Anderson, d.b.a. Autocycle Company, Account No. 1100, to the Autocycle *380 Corporation Account Receivable No. 1990. The $9,189.25 transferred by journal entry E was for July 1965 labor. During the period June 30, 1966 through November 30, 1966, Autocycle Corporation made the following payments on its account, numbered 1990, with Roto-Mech, Inc.: Check Date
Number
Amount
10-15-66
900
$5,000.00
11-18-66
1070
5,000.00
11-28-66
1119
9,603.35
On September 1, 1966, Roto-Mech, Inc. credited by journal entry in the amount of $4,189.25 the C. O. Anderson, d.b.a. Autocycle Company, Account No. 1100. The balance in the C. O. Anderson, d.b.a. Autocycle Company, Account No. 1100, was zero on September 1, 1966. On November 30, 1966, the journal entry of September 1, 1966, crediting the C. O. Anderson, d.b.a. Autocycle Company, Account No. 1100, in the amount of $4,189.25, was reversed. The balance in the C. O. Anderson, d.b.a. Autocycle Company, Account No. 1100, was $4,189.25 as a result of the journal entry reversal on November 30, 1966. On November 30, 1966, another journal entry credited the C. O. Anderson, d.b.a. Autocycle Company, Account No. 1100, in the amount of $9,189.25. The journal entry crediting the C. O. Anderson, *381 d.b.a. Autocycle Company, Account No. 1100, created a credit balance of $5,000 on November 30, 1966. On November 30, 1966, Roto-Mech, Inc. paid a "refund" in the amount of $5,000. The $5,000 refund resulted in a zero balance in the C. O. Anderson, d.b.a. Autocycle Company, Account No. 1100. On November 30, 1966, Roto-Mech, Inc. made out a check numbered 8976 to C. O. Anderson in the amount of $5,000. At some point prior to trial petitioner became ill and his corporations apparently ceased activity. Many of his records were imsplaced in storage and in preparation for trial. OPINION Issue 1. Whether the Commissioner's determination for the taxable year 1962 should be sustained.
Petitioner's tax return for 1965 reported a loss which resulted in a net loss carryback claim to the taxable year 1962. The Commissioner determined in his statutory notice that petitioner had taxable income in the amount of $4,799.88 in 1965 based on the following adjustments. a. Overstatement of Sales. The Commissioner determined that an Autocycle machine sold to Anderson Die Cast on December 10, 1964, and paid for on December 15, 1964, was included by petitioner in his 1965 sales reported on *382 Schedule C. We agree with the Commissioner's adjustment which properly reflected actual sales made during 1965. b. Decrease in purchases in 1965 totaling $3,076.35. In his statutory notice of deficiency, the Commissioner disallowed deductions for certain purchases, amounting to $3,076.35, which were purportedly made by petitioner in 1965. This adjustment had nothing to do with the sale to Anderson Die Cast. The adjustment involved disallowing purchases made in 1964 which were properly deductible in 1964. Petitioner presented no evidence with regard to this issue and has, therefore, failed to meet his burden of proof. Welch v. Helvering,290 U.S. 111, 115 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure.
c. Capitalization of improvements. The cost of making permanent improvements to machinery and equipment which has a useful life substantially beyond the taxable year is a capital expenditure. Section 263; section 1.263(a)-2(a), Income Tax Regs.
The Commissioner determined that amounts expended in 1964 to make permanent *383 improvements to Autocycle Machines Nos. 2081, 2110 and 2117, had been included in petitioner's 1965 cost of goods sold. Since these machines had been leased to Roto-Mech, Inc. during October 1964, the Commissioner determined that the cost of improvements should have been capitalized. Consequently he reduced cost of goods sold, capitalized the same amount and allowed petitioner additional depreciation. These machines were purchased from American Electronics, Inc. in 1964 and leased to Roto-Mech, Inc. during October 1964. According to petitioner's records, the cost of Autocycle Machines Nos. 2081, 2110 and 2117 was $7,000 each. [2]
*384 Petitioner argues that expenditures made on Autocycle Machines Nos. 2081, 2110 and 2117 fell within section 174(a) Research and Experimental Expenditures. The petitioner's witnesses testified that the machines as purchased were unfinished and that petitioner was having trouble with the machines in getting them to work. They also testified that the machines were completed according to special order. We conclude that these facts do not meet the criteria necessary to deduct under section 174(a). [3] The Autocycle machine and process had already been patented and a trademark existed. Also, these three machines already had been leased by petitioner to a job machine shop for use by that shop in manufacturing parts as part of the ordinary course of business of the lessee. *385 Petitioner cites section 1.174-2(a)(1), Income Tax Regs., for the proposition that "improvement of already existing property" constitutes research and development expenses. Petitioner, however, is using the language out of context. Reading the regulations further we find that section 1.174-2(b)(4) specifically excludes costs of the component parts of depreciable property, the costs of labor or other elements involved in its construction and installation, or costs attributable to the acquisition or improvement of the property. Petitioner made no attempt to evidence any facts from which an intelligible allocation could be made. Furthermore, petitioner argues that he is relieved from making such an allocation since he did not depreciate the machines. Petitioner recognizes that the Code provides that research and development expenses cannot be taken when the property is depreciated. This analysis, however, denies validity to Code section 167(a) which provides for an allowance *386 for the depreciation of property used in the trade or business, or held for the production of income. These machines were leased and as such were used in petitioner's trade or business as a lessor and petitioner admits the leases produced income. Petitioner's error in not depreciating these machines cannot excuse his error in not capitalizing the expenses. Issue 2. Whether the cost of purchasing equipment subsequently leased by petitioner should have been capitalized.
The Commissioner decreased the cost of goods sold in 1966 because petitioner had included the price of Autocycle Machine No. 2132 in that amount. He determined that the cost of acquiring the machine which the petitioner subsequently leased was a capital expenditure. Petitioner asserts in one of his requested findings of fact that Autocycle Machine No. 2132 was assembled from parts acquired from American Electronics, Inc. in 1964. Since he offers no evidence to support this determination we accept the Commissioner's reliance on a lease between petitioner and Roto-Mech, Inc. which states that Autocycle Machine No. 2132 was new in 1966. Because petitioner has provided no proof to demonstrate that Autocycle Machine *387 No. 2132 was in fact not included in his cost of goods sold computation for 1966 he has failed to meet his burden of proof. Welch v. Helvering,290 U.S. 111, 115 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure.
Issue 3. Whether petitioner received ordinary income from the sale of Autocycle Machine No. 2132.
The Commissioner determined additional unreported ordinary income by petitioner from the sale of Autocycle Machine No. 2132. This machine was recorded on an invoice as sold by Autocycle Corporation on August 22, 1966. He also determined that Autocycle Machine No. 2132 had not been transferred to Autocycle Corporation. On June 30, 1966, petitioner, d.b.a. Autocycle Company, transferred assets pursuant to a section 351 exchange to Autocycle Corporation. There was no list of specific assets transferred. In a lease dated after the section 351 exchange petitioner listed this machine as one he personally leased to his corporation, Roto-Mech, Inc. We conclude that petitioner did not intend to transfer Autocycle Machine No. 2132 during the section 351 exchange. The lease after the transfer evidences his intent to retain it. Autocycle Machine *388 No. 2132 was sold for $14,506.44 and the Commissioner requests that we find that it was purchased for $11,500 and that the resulting gain of $3,006.44 should be treated as ordinary income. Petitioner disputes the purchase value because the Commissioner bases it on valuations found in the lease agreements between petitioner and his corporation, Roto-Mech, Inc. He, however, offered no evidence as to its true cost; therefore, we conclude that the Commissioner's valuation is correct. Petitioner also did not offer evidence to establish that gain from the sale was reported or that the machine was held for longer than six months. Again petitioner has failed to meet his burden of proof. Welch v. Helvering,290 U.S. 111, 115 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure.
Issue 4. Whether a portion of petitioner's expenses for travel and entertainment in 1965 and 1966 were personal expenses and nondeductible.
On his 1965 Federal income tax return petitioner deducted $2,866.76 and on his 1966 return he deducted $8,034.34 for entertainment and travel. The Commissioner disallowed $188.40 in 1965 and $2,113.71 in 1966 as personal and nondeductible. *389 At trial the petitioner did not present the calendar book and charge slips or the spreadsheet of customers and charges which the bookkeeper had prepared for the purpose of correlating entertainment expenses with business activity. These were inadvertently lost by petitioner and his counsel following petitioner's illness. Petitioner relied on the testimony of his bookkeeper who had prepared the spreadsheet to prove that some of the disallowed expenses were in fact deductible travel and entertainment expenses. Section 274(d) provides that entertainment expenses, gifts, and travel costs are not allowable as deductions "unless the taxpayer substantiates by adequate records or by sufficient evidence corroborating his own statement." We conclude that petitioner maintained an adequate system delineating the elements of his various entertainment expenditures within the meaning of section 274. Joe F. Gizzi, 65 T.C. - (Nov. 4, 1975). The agent, in fact, upon examining petitioner's records allowed a large portion of his expenses, but after the audit and prior to trial the petitioner inadvertently *390 lost these records. Consequently, petitioner asks the Court to accept the bookkeeper's testimony that some but not all of the disallowed deductions were business expenses. [4]
Under section 1.274-5(c)(5), Income Tax Regs., if the taxpayer can establish that (1) he at one time possessed adequate records and (2) that his present lack of records is due to fire, flood or other casualty beyond his control, then he is free of the normal substantiation requirements. Joe F. Gizzi,supra at 7. However, the petitioner does not argue that his records were lost due to a casualty beyond his control but instead insists that the testimony of his bookkeeper is adequate substantiation. The bookkeeper gave no information as to the specific charges disallowed except to say that in her opinion some of the disallowed expenditures were personal. She admitted under cross-examination that she was not present when the disallowed charges were made *391 and therefore, would not have knowledge whether a particular expenditure was personal or business related. We conclude that the bookkeeper's testimony is not adequate to meet the requirements of section 274 and therefore do not reach any issue under section 162. Issue 5. Whether pursuant to Code section 482 income should be allocated to petitioner on the sale in 1967 of Autocycle Machine No. 2117 by petitioner's related corporation, Autocycle Corporation.
On April 27, 1967, petitioner sold to Autocycle Corporation an Autocycle Machine No. 2163 for $2,159.90. On the same day Autocycle Corporation sold an Autocycle Machine No. 2117 to Compact Precision for $8,750. Prior to the sale to the corporation one of petitioner's Autocycle machines was renumbered 2163. The Commissioner, concluding that these two machines were one and the same, argues that these transactions represent income that has been artificially diverted from one member to another of a controlled group. Relying on section 482, the Commissioner allocated the income from the sale to petitioner on the grounds that petitioner did not deal at arm's length with his corporation during the sale of Autocycle Machine No. *392 2117. The petitioner on the other hand asserts that Machine No. 2122 was the one renumbered 2163. Petitioner and the Commissioner agree that petitioner sold Machine No. 2122 to the corporation for $2,160 but disagree as to whether it was the one renumbered 2163. Petitioner relies on the coincidence of the same sales price to assert that 2122 and 2163 were the same machine. At some point prior to the sale by Autocycle Corporation of Machine No. 2117 it was necessary for petitioner to transfer the machine to the corporation. We conclude that he had not transferred it during the section 351 exchange because subsequent to the section 351 exchange he leased it to Roto-Mech, Inc. Therefore, we cannot agree with petitioner that Autocycle Machine No. 2117 was transferred to Autocycle Corporation in the section 351 exchange. On the date Autocycle Corporation sold Machine No. 2117 a renumbered machine was sold by the petitioner to Autocycle Corporation. We can only assume that this was Machine No. 2117 since no facts were presented to evidence its prior transfer. Because both sales occurred on the same day for different amounts and because no evidence was introduced as to the market fluctuation *393 for these machines on that day, we conclude that petitioner did not deal at arm's length with his controlled corporation, Autocycle. The best indication of the arm's length price for this machine is the price paid by Compact Precision, an independent party, to Autocycle Corporation. Section 1.482-2(e)(2), Income Tax Regs.
We can only conclude that petitioner negotiated the sale to Compact Precision prior to the transfer of the machine to his controlled corporation. Based upon these facts and conclusions the Commissioner clearly has authority to allocate income to reflect the true taxable income of petitioner. Sections 1.482-1(a)(6), 1.482-1(d)(1) and (4), Income Tax Regs.; Eli Lilly & Co. v. United States,372 F.2d 990 (Ct. Cl. 1967). As for Autocycle Machine No. 2122, the Commissioner in his statutory notice determined that petitioner had reported gain on its sale on his 1967 income tax return in the amount of its sales price. We agree with the Commissioner that the sale of Autocycle Machine No. 2122 resulted in section 1239 gain and that the gain as reported on petitioner's 1967 return should be reduced from $2,160 to $479.93. *394 Issue 6. Whether petitioner received constructive dividend income in 1966 from his related corporation on the corporate assumption and payment of a liability of petitioner's.
The assumption of a liability by a corporation for the payment of a refund by another corporation to a shareholder in both corporations constitutes a dividend. Section 301(a); Lash v. Commissioner,245 F.2d 20 (1st Cir. 1957), affg. on this point a Memorandum Opinion of this Court; Tirzah A. Cox,56 T.C. 1270 (1971). On June 30, 1966, Charles O. Anderson, d.b.a. Autocycle Company, was incorporated. The Commissioner determined, and it is not disputed, that the transfer of assets and liabilities was a tax-free exchange under Code section 351. One of the liabilities assumed from Charles O. Anderson, d.b.a. Autocycle Company, was an Account Payable to Roto-Mech, Inc. On July 1, 1966, the Autocycle Corporation General Ledger showed the balance due Roto-Mech, Inc. was $14,602.65. This balance overstated the true liability to Roto-Mech, Inc. The books and records of Roto-Mech, Inc. *395 carried three Accounts Receivable relating to Autocycle Corporation and Charles O. Anderson, d.b.a. Autocycle Company. The June 30, 1966 balance in the Account Receivable due from Autocycle Corporation was $4,775.97, almost $10,000 less than the amount carried on the Autocycle Corporation's books and records as a payable to Roto-Mech, Inc. The Commissioner determined that the Accounts Receivable on Roto-Mech, Inc.'s books and records as of the date of Autocycle's incorporation was actually $9,526.35. This amount is made up as follows: Autocycle Corporation
Account No. 1990
$4,775.97
C. O. Anderson, d.b.a.
Account No. 1100
4,189.25
Autocycle Company
Prepaid Insurance
Account No. 1300
500.15
Charles O. Anderson,
Account No. 1980
60.98
d.b.a. Autocycle
Company
Total
$9,526.35
The amount of $500.15 in Account No. 1300 involved prepaid insurance for Autocycle Company for the period January through June 1966. This amount was transferred by journal entry E from the Prepaid Insurance, Account No. 1300 to the Autocycle Corporation Account Receivable No. 1990. The amount of $60.98 in Account No. 1980 involved the actual balance due from Charles O. Anderson, *396 d.b.a. Autocycle Company, on the date of incorporation, June 30, 1966. Account No. 1980 was reduced to $60.98 in July 1966 to reflect charges and payments made prior to incorporation. On November 30, 1966, Roto-Mech, Inc. transferred the balance of $60.98 from Account No. 1980 to the Autocycle Corporation Account Receivable No. 1990. On June 30, 1966, the balance in the Roto-Mech, Inc. Account Receivable No. 1100 from C. O. Anderson, d.b.a. Autocycle Company, was $4,189.25. The Account Payable for this amount was transferred by petitioner to Autocycle Corporation under Code section 351. Except for a credit entry on September 1, 1966 in the amount of $4,189.25, which was reversed on November 30, 1966, no further charges were made to Account No. 1100 after the incorporation of Autocycle. On November 30, 1966, Account No. 1100 was credited for $9,189.25 and the Autocycle Corporation Account Receivable No. 1990 was increased by $9,189.25, $4,189.25 of which was transferred as an account payable from petitioner to Autocycle under Code section 351. The effect of the November 30, 1966 journal entries was to leave a credit balance of $5,000 in Account No. 1100. The credit balance on the *397 Account Receivable card from C. O. Anderson, d.b.a. Autocycle Company, Account No. 1100, was erased by a debit entry on November 30, 1966, described as "Paid Refund." The General Ledger describes the transaction as "Ref COA" (Charles O. Anderson). During October and November 1966, Autocycle Corporation reduced its Account Receivable in Roto-Mech, Inc.'s books and records by $19,603.35. On November 30, 1966, Roto-Mech, Inc. paid petitioner, Charles O. Anderson, the refund in the amount of $5,000 with check number 8976. In his statutory notice, the Commissioner determined that the refund of $5,000 to Charles O. Anderson constituted a constructive dividend. The refund paid Charles O. Anderson should have been paid to Autocycle Corporation or applied against Autocycle Corporation's debt to Roto-Mech, Inc. The rights of Autocycle Corporation to benefit from the inflated liability it assumed were ignored by petitioner. The effect of the bookkeeping entries on November 30, 1966 was to "plug" a figure by journal entry into the Account Receivable from C. O. Anderson, d.b.a. Autocycle Company, Account No. 1100, to justify the payment of a refund and to increase the liability of Autocycle *398 Corporation to Roto-Mech, Inc. In doing so, Autocycle Corporation assumed a liability in consideration for the payment of a so-called refund by Roto-Mech, Inc. of $5,000 to petitioner, Charles O. Anderson. Accordingly, the evidence clearly demonstrates that Autocycle Corporation assumed a liability for the benefit of petitioner, Charles O. Anderson. Because of this assumed benefit, petitioner received additional constructive dividend income from Autocycle Corporation. Issue 7. Whether petitioner received constructive dividends from Roto-Mech, Inc. and Autocycle Corporation when the corporations paid travel and entertainment expenses, made payments for the personal auto of the petitioner and paid rent on machines already sold to unrelated third parties.
Petitioner did not deal with these adjustments made by the Commissioner in his statutory notice of deficiency; therefore, we conclude that he has conceded this issue. Issue 8. Whether petitioner received additional unreported interest income in 1966 on a note to Autocycle Corporation.
The petitioner did not deal with this adjustment; therefore, we conclude that he has conceded this issue. Issue 9. Whether gain on *399 the sale of Autocycle Machine No. 2081 should have been reported as ordinary income in 1966.
Petitioner sold Autocycle Machine No. 2081 in 1966 but did not report the income until 1967. The Commissioner, in his notice of deficiency, included the gain as ordinary income in 1966. The Commissioner conceded in his opening brief that gain received from the sale of Autocycle Machine No. 2081 is section 1231 gain subject to the recapture provisions of section 1245 rather than section 1239 gain. The Commissioner also conceded that petitioner wrongfully reported the sale of Autocycle Machine No. 2110. The petitioner is entitled to offset the sales price by its adjusted basis with the gain reportable as capital gain under Code section 1231, subject to Code section 1245 recapture, and not as ordinary income as reported by the petitioner. Issue 10. Whether interest expense on a note to American Electronics, Inc. should be decreased from $1,713.60 to $476.
During trial petitioner conceded this issue. Issue 11. Whether sales of Autocycle Corporation stock in 1967 qualified as installment sales.
Petitioner did not deal with this adjustment, therefore; we conclude that he *400 has conceded this issue. Issue 12. Whether petitioner received constructive dividend income in 1967 from his related corporation following purchase of a Warner Swasey machine.
The Commissioner in his reply brief conceded this issue. In conclusion, we feel compelled to comment that this case was poorly prepared for trial. Stipulations of fact, the backbone of trials in this Court, were missing. The taxpayer was in ill health and could not be present. Books and records, in a trial where the petitioner had the burden of proof, were lost and could not be produced. Secondary evidence was fragmentary and to a great extent, hearsay and confusing. We have done what we consider the best we could with this record. If appealed, we sympathize with the higher court; but it may be we have curable blind spots. If reversed or remanded we can only lose some more sleep. These are editorial remarks, but evidence our frustration. Decision will be entered under Rule 155.
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954 unless otherwise stated.↩
2. Petitioner argues that the Commissioner's use of machinery values taken from petitioner's leases are fallacious, erroneous and fictional. He relies on the testimony of Frederick L. Masterman as conclusive in showing the values used by the Commissioner were erroneous. Masterman was never shown the leases nor was he ever qualified as a witness to testify or asked if he had knowledge how petitioner determined the costs assigned to the Autocycle machines shown on the leases. Because of the unavailability of other records to establish basis, the cost figures placed on the leases by petitioner provided the only evidence available of basis to make adjusting entries to petitioner's cost of goods sold and in correctly computing depreciation and gain from the sales of Autocycle Machines Nos. 2081, 2110, 2117, 2122 and 2132.↩
3. SEC. 174. RESEARCH AND EXPERIMENTAL EXPENDITURES. (a) Treatment as Expenses.-- (1) In general.--A taxpayer may treat research or experimental expenditures which are paid or incurred by him during the taxable year in connection with his trade or business as expenses which are not chargeable to capital account. The expenditures so treated shall be allowed as a deduction.↩
4. None of petitioner's witnesses testified as to the exact amount of personal expenses which petitioner conceded in his brief.↩